UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TCP PRINTING CO., LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:15-CV-178 JAR |
| | ) |
| ENTERPRISE BANK & TRUST, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motions to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 10) and Failure to State a Claim (Doc. No. 11) and Motion to Strike Jury Demand and Enforce Waiver of Jury Trial. (Doc. No. 13) The motions are fully briefed and ready for disposition.

**I.    Background**

Plaintiff TCP Printing Co., LLC ("TCP"), a Pennsylvania limited liability company, brings this action for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), conversion (Count III) and unjust enrichment (IV) against Defendant Enterprise Bank & Trust ("Enterprise"), a Missouri corporation.

In early 2014, TCP became interested in purchasing JPB Investments VI LLC ("JPB" or "Borrower"), a financially distressed printing company, and taking over its business operations. (Complaint ("Compl."), Doc. No. 1 at ¶ 17) At that point JPB had already defaulted on three loans extended by Enterprise, and owed Enterprise over $1.9 million. (Id. at ¶¶ 10-12, 15-16) Accordingly, Enterprise had a first priority lien on substantially all of JPB's assets.

To facilitate TCP's purchase of JPB, Enterprise, JPB and TCP entered in an Agreement Relating to Collateral ("the Collateral Agreement") on May 22, 2014. (Id. at ¶ 19; Doc. No. 1-4) The Collateral Agreement provided that all proceeds from JPB's inventory, accounts receivable and work in progress identified in Exhibit A to the Collateral Agreement would be paid to Enterprise and applied to the outstanding loan balance. (Id. at ¶ 22; Doc. No. 1-4 at ¶ 5) The Collateral Agreement further provided that any proceeds from post-closing work funded by TCP and not listed on Exhibit A would be outside the scope of Enterprise's lien, and belong to TCP:

> 6. Lender's Release of Lien Regarding Inventory and Work-in Progress Funded by TCP. Lender agrees to not assert its lien, security interest or any claim regarding the Borrower's Inventory and Work-in-Progress that is funded by TCP and is not listed on Exhibit A thereto.

(Id. at ¶¶ 23-24) Consistent with this "carve-out," Paragraph 3 of the Collateral Agreement provided that "[a]ll of the inventory listed on Exhibit A will be segregated and identified separately from all inventory purchased through funds provided by TCP." (Id. at ¶ 25)

The Collateral Agreement also provided that TCP would purchase from JPB, for $885,800.00, such of JPB's equipment as was listed on a schedule attached to the Collateral Agreement as Exhibit B. If TCP was unable to obtain financing for the equipment purchase, or to otherwise pay the equipment price, by the expiration date, then TCP would be obligated to "immediately vacate the Borrower's premises and all of TCP's rights under this Agreement with regard to the property listed on Exhibits A and B hereto shall cease and terminate." (Id. at ¶¶ at 27-28)

When TCP was unable to obtain financing or otherwise pay for the equipment by the specified date, Enterprise invoked its right under the Collateral Agreement to demand that TCP vacate JPB's premises. (Id. at ¶¶ 29-31) Thereafter, according to TCP, Enterprise caused approximately $317,762 in TCP-funded work to be applied towards payment of the outstanding

loans. (Id. at ¶¶ 47, 57) TCP alleges Enterprise's misappropriation of revenue due TCP has deprived it of the cash flow necessary to continue its operations. (Id. at ¶ 53)

Enterprise moves to dismiss the action either for lack of jurisdiction under Fed.R.Civ.P. 12(b)(1) or failure to state a claim under Fed.R.Civ.P. 12(b)(6). To the extent the complaint is not dismissed in its entirety, Enterprise moves to strike TCP's jury demand and enforce a jury trial waiver in the Collateral Agreement.

## II.  Legal standard

A motion to dismiss under Fed.R.Civ.P. 12(b)(1) challenges the Court's subject matter jurisdiction to hear the case. A court has broad authority to decide its own right to hear a case, and it can consider matters outside of the pleadings when deciding a "factual attack" under Rule 12(b)(1). Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir.1990); see Ozark Society v. Melcher, 229 F.Supp.2d 896, 902 (E.D.Ark.2002) (explaining that a "factual attack" challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings). Further, when the defendant makes a "factual attack," it is the plaintiff's burden to establish that jurisdiction exists, and "no presumptive truthfulness attaches to the plaintiff's allegations." Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977)). In other words, the non-moving party does not have the benefit of Rule 12(b)(6) safeguards in a factual attack. Id. at 729 n. 6.

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (citations omitted). "When ruling on a motion to dismiss [under Rule 12(b)(6)], the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir.2001).

### III. Discussion

#### A. Subject matter jurisdiction

For limited liability companies, the Court must examine the citizenship of each member of the limited liability company for purposes of diversity jurisdiction. GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc., 357 F.3d 827, 829 (8th Cir.2004). TCP alleges "its members are citizens of states other than Missouri." (Compl. at ¶ 1) Enterprise contends TCP's failure to specifically plead the citizenship of its members fails to satisfy its burden of establishing diversity under 28 U.S.C. § 1332.

In response, TCP submits the declaration of its President and sole member, Gregory Bozzi. (Bozzi Declaration, Doc. No. 17-1) Bozzi states he resides in Pennsylvania and is a citizen of Pennsylvania. (Doc. No. 17-1 at ¶ 4) As the Complaint alleges that Enterprise is a Missouri corporation with its principal place of business in Missouri (see Compl. at ¶ 2), it appears that complete diversity exists and this Court has proper subject matter jurisdiction. See Infinaquest, LLC v. Directbuy, Inc., 2012 WL 3921776, at *2 (N.D.Ind. Sept. 7, 2012).

Enterprise has not contested the amount in controversy threshold for diversity jurisdiction and declined to file a reply in this case, indicating it no longer disputes that diversity exists. Accordingly, the motion to dismiss for lack of subject matter jurisdiction will be denied.

**B. Failure to state a claim**

**Breach of contract (Count I)**

To state a claim for breach of contract, a plaintiff must plead the traditional elements of formation, performance, breach and damages. See Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd., 789 F. Supp. 2d 1148, 1155 (D. Minn. 2011). Here, TCP alleges the conditions precedent to the effectiveness of the Collateral Agreement, as defined in Paragraph 13, were met. (Compl. at ¶ 56) TCP further alleges Enterprise breached the Collateral Agreement by, *inter alia*, taking possession of proceeds from work that was funded by TCP and not listed on Exhibit A to the Collateral Agreement. (Id. at ¶ 57) Finally, TCP alleges that as a result, it has incurred losses in the amount of $317,762, plus accrued interest and profits lost as a consequence of being forced to shut down its operations. (Id. at ¶ 58) Enterprise argues this claim should be dismissed because TCP failed to satisfy a condition precedent, i.e., that TCP's signature be notarized. Alternatively, Enterprise argues the Collateral Agreement expired before Enterprise applied Borrower's money toward payment of the loan. (Doc. No. 12 at 4-7)

TCP responds that Enterprise waived this condition by proceeding to act in accordance with the Agreement and closing on the transaction to acquire JPB. (Doc. No. 18 at 7-10) In addition, Enterprise is collaterally estopped from contesting the Agreement's effectiveness in light of its June 2, 2014 letter invoking its rights under the Agreement and requiring TCP to vacate the premises. TCP further argues Enterprise's alternative argument that the Agreement

had expired is belied by the fact that Enterprise reserved its rights to continue to enforce the Agreement in its June 2, 2014 letter. (Id. at 10-11)

The Court is not reviewing the merits of the claim at this stage of the proceedings. These are matters to be determined by the evidence. The Court finds Count I is sufficiently pled.

**Breach of the implied covenant of good faith and fair dealing (Count II)**

Related to the breach of contract claim is the claim that Enterprise breached the implied covenant of good faith and fair dealing. Enterprise argues this claim must be dismissed because like the claim for breach of contract, the alleged misconduct occurred after the collateral Agreement expired. (Doc. No. 12 at 7) Again, the Court is not reviewing the merits of the claims at this stage of the proceedings. The Court finds Count II is sufficiently pled.

**Conversion (Count III)**

Under Missouri law, conversion is "the unauthorized assumption and exercise of ownership rights over the … property of another party to the exclusion of the owner's rights." Mueller v. Barton, 2014 WL 4546061, at *16 (E.D.Mo. Sept. 12, 2014) (citing IOS Capital, LLC v. Allied Home Mortg. Capital Corp., 150 S.W.3d 148, 152 (Mo.Ct.App.2004)). A claim for conversion may be established in one of three ways: "(1) by showing a tortious taking, (2) a use or appropriation by the defendant indicating a claim or right in opposition the owner, or (3) a refusal to give up possession on demand." Boswell v. Panera Bread Co., 2015 WL 631259, at *3 (E.D.Mo. Feb. 12, 2015) (quoting Envirotech, Inc. v. Thomas, 259 S.W.3d 577, 592 (Mo.Ct.App.2008)). Although conversion "generally is not a proper [legal] theory where the claim involves money, as opposed to a specific chattel," Mueller, 2014 WL 4546061, at *16 (quoting Johnson v. GMAC Mortg. Corp., 162 S.W.3d 110, 125 (Mo.Ct.App. 2005)), specific checks, drafts or notes will support a cause of action for conversion where they can be described

or identified as a specific chattel. Capitol Indem. Corp. v. Citizens Nat. Bank of Fort Scott, N.A., 8 S.W.3d 893, 900 (Mo.Ct.App. 2000).

Here, TCP alleges Enterprise took possession of all proceeds from TCP-funded work, depositing same in its cash account and applying them to the outstanding loan balance, thereby depriving TCP of the right to possession. (Compl. at ¶¶ 37-45, 66-67) Enterprise contends TCP's conversion claim fails because the money at issue cannot be specifically identified, a requirement to maintain a conversion claim. (Doc. No. 12 at 7-8) In response, TCP contends the checks that were allegedly converted can be specifically identified by attributing them to the invoices at issue. According to TCP, Enterprise diverted proceeds from TCP-funded work into a single cash account. Because the funds were commingled after, not before, the misappropriation took place, TCP asserts its conversion claim has been adequately pled. (Doc. No. 18 at 12-14) TCP argues it should be permitted to conduct discovery to determine how and under what circumstances the checks for TCP-funded work ended up in a single account over which Enterprise exercised de facto control. (Id. at 14)

Assuming for purposes of a motion to dismiss that the allegations in the Complaint are true, the Court finds these allegations are sufficient to state a claim for conversion. See FCA Constr. Co., LLC v. Singles Roofing Co., 2011 WL 5275852, at *2 (D.Minn. Nov. 3, 2011) (denying a motion to dismiss a conversion claim where "plaintiff has alleged that it held a property interest in the money at issue and was wrongfully deprived of its property interest in that money by [defendant]'s misappropriation of it").

**Unjust enrichment (Count IV)**

To state a claim for unjust enrichment, a plaintiff must allege (1) a benefit was conferred upon the defendant, (2) at the expense of the plaintiff, and (3) it would be unjust to allow the

defendant to retain the benefit. Federated Mut.Ins.Co. v. Peery's Auto Parts, LLC, 2012 WL 3062720, at *2 (W.D.Mo. July 26, 2012) (citing S&J, Inc. v. McLoud & Co., 108 S.W.3d 765, 768 (Mo.Ct.App. 2003)). The Court finds TCP's claim is properly pled in the alternative to its breach of contract claim, see Bradbury v. Network Enterprises, Inc., 2013 WL 587884, at *5 (E.D.Mo. Feb. 13, 2013); Fed.R.Civ.P. 8(d), and alleges sufficient facts showing Enterprise was unjustly enriched by the receipt of a benefit at the expense of TCP. TCP alleges Enterprise received a benefit in the amount of $317,762 in proceeds from work funded by TCP and was enriched by that benefit at the expense of TCP when it applied those proceeds toward payment of JPB's loans. (Compl. at ¶¶ 39-45, 70-74)

In support of its motion to dismiss, Enterprise argues there is no inequity in a lender applying a borrower's funds toward payment of a loan. (Doc. No. 12 at 9) Yet viewing the allegations in the light most favorable to TCP, Enterprise's application of proceeds belonging to TCP to JPB's loan constitutes an unjust retention of a benefit. Accordingly, the motion to dismiss TCP's claim for unjust enrichment will be denied.

**Jury trial waiver**

Given the Court's ruling herein denying Enterprise's motion to dismiss, TCP does not contest Enterprise's motion to enforce the Collateral Agreement's jury-waiver provision. (See Doc. No. 19 at 2) The motion to enforce jury-waiver provision will, therefore, be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [10] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss for Failure to State a Claim [11] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Jury Demand and Enforce Waiver of Jury Trial [13] is **DENIED** as moot.

**IT IS FIINALLY ORDERED** that a Rule 16 conference will be set by separate order.

Dated this 11th day of August, 2015.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**